951 F.2d 1260
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 SOUTHWESTERN PUBLIC SERVICE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Full Requirements Cooperative Customers of Southwestern
Public Service Company, Intervenors.
 No. 90-9540.
 United States Court of Appeals, Tenth Circuit.
 Dec. 13, 1991.
 
 Before JOHN P. MOORE and EBEL, Circuit Judges, and ALDON J. ANDERSON, District Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 The petitioner, Southwestern Public Service Company, petitions this court to review certain orders of the Federal Energy Regulatory Commission ("Commission") relating to a rate filing by the petitioner. As explained below, we affirm the Commission.
 
 
 2
 This case arises from the appeal of the Commission's decision regarding a proposed two-step wholesale rate increase for electrical power sought by Southwestern. The Commission permitted the proposed rate increase, subject to refund. A number of wholesale customers moved to intervene. A Commission Administrative Law Judge (ALJ) conducted a hearing on the reasonableness of the rate increase. The ALJ ruled for Southwestern in some instances and against it in others. All parties filed exceptions to the ALJ's findings. The Commission affirmed the ALJ in part and reversed in part. The Commission denied all applications for rehearing. On appeal to this court, Southwestern challenges four Commission determinations.
 
 
 3
 We review the Commission's determinations using a deferential standard. Permian Basin Area Rate Cases, 390 U.S. 747, 790 (1968) (Federal Power "Commission's orders may not be overturned if they produce 'no arbitrary result.' ") (citations omitted). We examine each element of the Commission's orders individually. If substantial evidence supports the Commission's finding, we do not disturb it. Permian Basin, 390 U.S. at 791-92 ("the court ... must decide whether each of the order's essential elements is supported by substantial evidence"); Public Service Co. of New Mexico, 832 F.2d 1201, 1206 (10th Cir.1987). On the specific issue of return on equity ("ROE"), our standard is even more deferential, as explained below.
 
 
 4
 I. Tax Accounting Method.
 
 
 5
 The Commission affirmed the ALJ's order that Southwestern adopt the normalization method of accounting rather than the flow-through method used in the past. Pursuant to 18 C.F.R. § 35.25, a public utility must use the normalization method unless it and its customers agree otherwise. In essence, the Commission concluded that Southwestern and its customers made no such agreement.
 
 
 6
 Southwestern asserts that the Commission failed to take into account the "unrefuted testimony" of Southwestern's Secretary and Treasurer, Doyle Bunch, that Southwestern's 1982 settlement with its customers had included an agreement to continue to use the flow-through method of accounting. Southwestern argues that because Bunch's testimony is uncontradicted, the Commission must accept it as true.
 
 
 7
 In response, the Commission cites four facts that, it argues, support its finding that Southwestern and its customers did not agree to use the flow-through method:
 
 
 8
 (1) the Commission's regulations--effective at the time of all pertinent Southwestern rate filings--require use of normalization rather than the flow through treatment, absent agreement by the utility to the contrary; ... (2) Southwestern's original rate increase proposals in this proceeding, as well as two prior rate dockets, all explicitly reflected tax normalization along with a deferred income tax provision associated with normalization; ... (3) Southwestern's rate settlements ... were silent as to the parties' agreement regarding tax treatment; and (4) Southwestern never sought a waiver of the Commission's normalization regulations so as to permit it to use the flow-through method.
 
 
 9
 Respondent's Brief at 29.
 
 
 10
 The record indicates that the Commission did not ignore Bunch's testimony. Rather, the Commission concluded that for Southwestern "to admit that it originally filed using tax normalization and a South Georgia adjustment, in accordance with the Commission's regulations, and then claim that it had settled on a flow-through basis without expressly saying so in the settlement agreements strains credulity." Southwestern Public Service Co., 51 F.E.R.C. p 61, 130, at 61, 370 (1990).
 
 
 11
 A careful examination of the record has satisfied us that substantial evidence exists to support the Commission's finding. Therefore, we affirm the Commission on this issue.
 
 
 12
 II. Accrual of Expenditures.
 
 
 13
 Southwestern next argues that the Commission should not have disallowed Southwestern's accrual of Allowance for Funds Used During Construction (AFUDC) on pollution control Construction Work in Progress (CWIP). The Commission asserts that these expenditures were "already reflected in Southwestern's current rate base." Respondent's Brief at 5.
 
 
 14
 Southwestern again contends that although the settlement agreement did not specify that CWIP would not be included, the testimony of its witness Bunch establishes that the rate base did not reflect CWIP. In its Order Denying Rehearing, the Commission noted the following reasons indicating that pollution control CWIP was included:
 
 
 15
 (1) Southwestern's prior practice was to include pollution control CWIP in rate base and discontinue accrual of related AFUDC, as required by the Commission's regulations; (2) Southwestern's [earlier] filings ... included CWIP in rate base and discontinued accrual of related AFUDC, as required by the Commission's regulations; and (3) Southwestern did not explicitly incorporate into the settlements any express provision or other indication that it intended to exclude CWIP from settlement rate base and instead continue accrual of AFUDC.
 
 
 16
 Southwestern Public Service Co., 51 F.E.R.C. p 61,130, at 61,372 (1990).
 
 
 17
 After reviewing the record, we are satisfied that substantial evidence supports the Commission's findings.
 
 
 18
 III. Return on Equity.
 
 
 19
 Southwestern challenges the Commission's decision to adjust the appropriate return on equity ("ROE") from 15.72% to 15.25%. This latter figure represented the lower end of the range that Southwestern had previously agreed with its customers was reasonable. Because the figure is within this "zone of reasonableness," we will not disturb the Commission's decision. See Public Service Co. of New Mexico v. FERC, 832 F.2d 1201, 1210 (10th Cir.1987) ("Because the revised figure was still within the zone of reasonableness, we are without power to question it. We agreed that 'one who challenges a rate must show that the result, and not the method employed, is unreasonable.' ") (citations omitted).
 
 
 20
 IV. Application of Overfunded Pension Plan.
 
 
 21
 Southwestern argues that it should be permitted to include the overfunded portion of a pension plan in its rate base. Southwestern acquired the assets of another electrical utility, including a pension plan overfunded by approximately $2,700,000. Southwestern contends that this amount is a "required prepayment" and therefore working capital includable in its rate base pursuant to 18 C.F.R. § 35.13(h)(12).
 
 
 22
 18 C.F.R. § 35.13(h)(12), entitled "Statement AL--Working capital," provides:
 
 
 23
 Statement AL consists of statements for Period I and Period II designed to establish the need for working capital to maintain adequate levels of operating supplies, to meet required prepayments, and to meet ongoing cash disbursements that must be made at a time different than related revenue receipts for utility services rendered.
 
 
 24
 The Commission affirmed the ALJ's ruling that the pension prepayments were not "required" within the meaning of section 35.13(h)(12).
 
 
 25
 We will accord great deference to the Commission's interpretation of its own regulations. City of Gillette v. FERC, 737 F.2d 883, 884-85 (10th Cir.1984). Although there do not appear to be other cases interpreting the term required prepayment in the utility rate-setting context, the Commission's interpretation is the common sense meaning.[1] Southwestern has made no showing that there was any requirement that they make the pension payment in advance. The mere fact that Southwestern chose to enter into a purchase agreement that included that amount in the assets to be purchased does not render it a required prepayment for working capital pursuant to 18 C.F.R. § 35.13(h)(12). We therefore will not disturb the Commission's decision.[2]
 
 
 26
 Having found the Commission's findings supported by substantial evidence, we AFFIRM.
 
 
 
 *
 Honorable Aldon J. Anderson, Senior District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 For example, the ALJ ruled that franchise taxes required by state law to be prepaid were "required prepayments" within the meaning of section 35.13(h)(12). Southwestern Public Service Co., 34 F.E.R.C. p 63,040, at 65,153 (1986)
 
 
 [2]
 The Commission has indicated that Southwestern would not be precluded from proposing an adjustment in other rate proceedings to reflect this overfunding so long as its customers and other interested parties had an opportunity to address that proposed treatment. Brief for Respondent 27-28